## NASHUA SAV. BANK et al. v. BURLINGTON ELECTRIC LIGHTING CO. et al.

(Circuit Court, S. D. Iowa, E. D.    April 24, 1900.)

SALES—DAMAGES—FRAUDULENT REPRESENTATIONS.

The measure of damages recoverable in an action of tort by a purchaser against a seller for false and fraudulent representations inducing the sale is the actual loss sustained by the plaintiff by reason of the purchase, which is to be arrived at by adding to the price paid by plaintiff such outlay as is legitimately attributable to the wrong conduct of the defendant, from which is to be taken the fair actual value of the property received.

On Motion to Strike out Portions of Answer and Counterclaim.

E. S. Huston, for plaintiffs.
Walsh Bros., for defendants.

SHIRAS, District Judge.   In this action the plaintiffs seek to recover against the defendants a judgment for interest due on 30 coupon bonds, for $1,000 each, issued by the Burlington Electric Lighting Company, on the 1st day of September, 1892; it being averred that the interest coming due on the 1st day of September, 1895, and semiannually thereafter, according to the coupons attached to the bonds, remains due and unpaid, amounting to $10,215.   In answer to the petition, and also by way of counterclaim, the electric lighting company avers that the bonds sued on were given in payment for certain property and rights sold and conveyed by plaintiffs to the J. P. Calnan Construction Company, the purchase being in fact made for the defendant company; that the property so sold embraced three lots in the city of Burlington, Iowa, with a brick building thereon, containing eight boilers and appurtenances, which, with the pipes and connections laid in the streets, formed a plant used for furnishing steam for heating purposes to the people of the city, there being on the lots sold a well used for the purpose of supplying water to the boilers.   It is also averred that, to the knowledge of plaintiffs, the defendant company had contracted to erect an electric lighting plant at the cost of $125,000 upon the purchased realty, and purposed to use the boilers in question in furnishing the steam power necessary in operating the lighting plant, as well as in furnishing steam for heating purposes; that, with knowledge of these facts and as inducements to defendant to make the purchase, the plaintiffs represented that the boilers and plant were in good condition, capable of standing a pressure of from 80 to 100 pounds per square inch, and capable of furnishing the steam necessary for use in operating the proposed electric lighting plant, in addition to the steam needed for heating purposes, and that the well on the premises furnished water sufficient in quantity and quality to properly run the boilers to their full capacity.   It is then averred by defendant that these several representations made by plaintiffs were untrue, and were knowingly and falsely made, to induce the defendant to make the purchase; that the boilers were in an unsafe condition, not fit for use, but the defects therein had been carefully con-

100 F.—43

cealed and covered up; that, before the same could be put to the use for which they were purchased, the defendant was obliged to make extensive repairs to the boilers and the steam pipes in the streets, at a total cost of $18,000; that the well upon the premises was found to be wholly insufficient to furnish the quantity and quality of water needed to keep the boilers supplied, and therefore it had to be abandoned, and as a consequence the defendant has been obliged to pay for the water used since 1892 the sum of $5,600, and will be compelled to pay in the future at least the sum of $700 per annum; that, in addition to the cost of repairing the boilers and plant, the defendant was deprived of the use of the plant for a period of 4 months, while the repairs were being made, and consequently during that time could not use the electric plant, at a loss to defendant of $1,000 per month, and was also compelled to use an old electric plant for about 12 weeks, at a loss of $3,000. The case is now before the court upon a motion made by plaintiffs to strike out parts of the answer and counterclaim, and thereby is presented the question of the rule of damages applicable to a case of this character, assuming that the evidence will support the allegations of defendant's pleadings.

In these pleadings the defendant does not rely upon a breach of contract or warranty, but bases the defense and claim for damages upon the falsity of the representations alleged to have been made by plaintiffs. The rule of damages to be applied, therefore, is that which governs in cases of tort, as distinguished from actions based on contract, and that rule is stated by the supreme court in Smith v. Bolles, 132 U. S. 125; 10 Sup. Ct. 39, 33 L. Ed. 279, in the following terms:

"The measure of damages was not the difference between the contract price and the reasonable market value, if the property had been as represented to be. * * * What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract. The gist of the action was that the plaintiff was fraudulently induced by the defendant to purchase stock upon the faith of certain false and fraudulent representations. * * * If the jury believed from the evidence that the defendant was guilty of the fraudulent and false representations alleged, and that the purchase of the stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to the defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation. The reasonable market value, if the property had been as represented, afforded, therefore, no proper element of recovery., Nor had the contract price the bearing given to it by the court. What the plaintiff paid for the stock was properly put in evidence, not as the basis of the application of the rule in relation to the difference between the contract price and the market or actual value, but as establishing the loss he had sustained in that particular. If the stock had a value, that would necessarily be applied in reduction of the damages."

We thus have the general rule laid down governing the rule of damages in cases similar to that now before the court. Putting it in the form of an account, on the one hand there is to be charged against the party liable for the damages the money paid as the pur-

chase price, to which is to be added all outlay legitimately attributable to the wrong conduct of such party, and, on the other hand, credit is to be given for the actual fair value of the property transferred; the difference between these amounts being the amount of damages to which the injured party is entitled.   In placing before the jury the facts to be considered in determining the fair value of the property in the condition in which it was when sold, it is competent to show the character and cost of the repairs needed to put the plant in condition for use, not that this outlay is to be deemed an element of the money damages, but the same is a matter of fact or evidence for the consideration of the jury upon the question of the actual value of the property.   So, also, the fact, if it be true, that the well upon the premises had to be abandoned because the water therein was not as represented, and water had to be procured from other sources, is a matter to be considered by the jury in ascertaining the value of the property at the date of the sale.

The matters set forth in the nineteenth, twentieth, and twenty-first paragraphs in the answer do not set up items of damage, within the rule already stated, as they do not include moneys paid out, but are of the nature of a loss of expected profits, and the motion to strike out these paragraphs is sustained.   There are portions of other paragraphs in the answer that, upon careful examination, might be held to be open to objection; but no harm can result from these statements, in view of the ruling upon the main questions presented by the motion, and therefore the motion will be sustained only as to the paragraphs named.