CHARLES F. FORD et al. Plaintiffs in Error, *vs.* CATHERINE GAVIN FORD et al. Defendants in Error.

*Opinion filed February 20, 1913.*

APPEALS AND ERRORS—*when decree in will contest case will not be reversed for error in instructions.* If the Supreme Court is of the opinion, in a will contest case, that substantial justice has been done and that the error complained of in the instructions could not, under the circumstances, have affected the result, the decree will not be reversed for such error; and the same rule applies to error in refusing to give a proper instruction.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

ALEXANDER H. HEYMAN, for plaintiffs in error.

WILLIAM J. NAUGHTON, and JOSEPH D. O'DONNELL, for defendants in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a bill filed in the circuit court of Cook county to set aside the will of John S. Ford on the ground that the testator was of unsound mind and memory when the will was executed. An answer was filed and an issue at law was formed and submitted to a jury. The verdict found that the instrument in question was the last will and

testament of the deceased and against the contestants upon
the issue as to testamentary capacity. The court overruled
a motion for a new trial and rendered a decree dismissing
the bill. Contestants have sued out a writ of error from
this court and ask a reversal because of alleged errors in
giving and refusing instructions.

Plaintiffs in error have abstracted the testimony, but it
is not contended that the verdict of the jury is contrary to
the weight of the evidence. A brief statement of the es-
tablished facts will aid in the determination of the errors
relied upon for reversal.

The will in question was prepared by Joseph A. O'Don-
nell on May 3, 1910. The testator died on the 16th day
of May. O'Donnell testifies that he is a lawyer engaged
in the general practice in Cook county and has been so
engaged for twenty-four years; that he has been a mem-
ber of the legislature several terms and was elected judge
of the circuit court of his county; that he had known
John S. Ford, the testator, thirty-five years; that Ford
was a member of the bar and had formerly practiced his
profession but for a number of years had been engaged in
the cooperage business; that Ford was between fifty and
fifty-five years of age at the time of his death; that he
was intimately acquainted with Ford and had been his
friend from boyhood; that on the day the will was writ-
ten he was called to the testator's house; that he found
him sitting in a chair in the kitchen; that he had a long
talk with the testator as to the provisions he wanted in the
will, before the will was drafted; that the testator told
him that his affairs were in bad shape; that he owned
some real estate that was heavily encumbered; that he was
indebted to his sister, Mrs. Irwin, about $3000, and that he
was anxious to provide for her so that she would not lose
the amount he owed her; that he mentioned his other rela-
tives, and said that he had made provisions for some of
them and that others were rich and did not need any as-

sistance from him; that he told witness that he wanted to
make a provision for his sister, Mrs. Irwin, who was poor,
out of his property and leave the balance of it to his wife;
that the will was drawn in accordance with these instruc-
tions and duly executed and properly attested. O'Donnell
testifies that from his conversation with the testator, and
from his long and intimate acquaintance with him, he be-
lieves that on the day of signing the will he was of per-
fectly sound mind and memory, and just as rational, lucid
and intelligent on that day as he had ever seen him in all
the years he had known him.

Father O'Brien testified that he was a Catholic priest
and had been located in Chicago for about twenty-five
years; that he was pastor of St. Sylvester's church and
had a congregation of about three thousand people; that
John S. Ford was one of his parishioners; that he had
heard of his sickness and had called to see him frequently,
both prior and subsequent to the execution of the will;
that he went to see the deceased on May 3; that the de-
ceased told him on that occasion to go to the telephone and
call O'Donnell and have him come down to his house,—
that he wanted to see him; that he called O'Donnell on
the 'phone and he said he would come at once; that wit-
ness reported the result of his conversation to the deceased,
remained ten or fifteen minutes and went away; that he
called again later in the day, after O'Donnell had been
there and prepared the will, and that he saw Ford fre-
quently from that time until he died. Father O'Brien tes-
tifies that the mind of the testator was perfectly clear,—
not the least clouded at any time; that he had sufficient
mind to comprehend his property and to understand who
his relatives were; that he had known deceased eighteen
months; that he had frequently seen him in church prior
to his illness and more frequently afterwards, when he vis-
ited him at his home.

Dr. J. L. McCollum testifies that he is a practicing physician with twenty-two years' experience and a professor of surgery in the Illinois Medical College; that he treated the testator from May 1 until the 16th, when he died; that he was the physician in charge of the case and saw him once or twice each day; that he was there at the time the will was being written; that the deceased was at that time able to walk about the house unassisted; that he was suffering from Bright's disease. The physician testifies unequivocally that the testator was of sound and disposing mind and memory on the third day of May and perfectly capable of transacting any business. He describes the physical condition of the testator, and says that he had a dropsical effusion in his feet and legs, and that it extended up to the abdominal cavity and interfered somewhat with his breathing and caused some pain from the distention of the tissues; that the heart was slightly hypertrophied and his pulse rapid, but the doctor is very clear and positive that the mind of the testator was entirely clear and in no way affected by his physical ailments.

These witnesses are corroborated by Mrs. Wilhelmina Weiss, and her daughter, Minnie Weiss, who attested the will, and in addition to these a number of other lay witnesses, who saw the deceased before and after the execution of the will, gave corroborating testimony.

Miss Gavin, a school teacher of twenty years' experience and a sister of the testator's wife, who had a very intimate acquaintance with the deceased for fourteen years before his death, and who was with the deceased all of the night preceding the day the will was executed and was there at the house during the day the will was executed, testifies that the deceased sat up in a chair without any pillows or other supports about him, and was able to walk from one room to another unassisted and without the use of crutches; that he spoke without hesitation and was perfectly clear and rational during that time; that she was

present when the will was drafted; that after the will was written the testator called for his glasses and the witness got them for him; that he read the will and then signed it and had the witnesses called, who also signed the will. This witness says that he was absolutely sane and of sound mind, and able to understand the things going on about him, to comprehend all about his property and relatives and able to transact any ordinary business.

On behalf of the contestants some physicians testify, in answer to hypothetical questions, that in their opinion, based upon the hypothetical state of facts, the deceased must have been of unsound mind when the will was executed; and a few lay witnesses, none of whom had seen deceased for some time prior to his death, express the opinion that he was not of sound mind when they last saw him.

The foregoing is the substance of the testimony. The testimony preponderates so clearly and conclusively in favor of the testamentary capacity of the deceased that the plaintiffs in error make no contention that the verdict is not well supported. Under the evidence in this record any other verdict than the one rendered would have to be set aside.

Plaintiffs contend that the court erred in giving instructions 17, 18 and 25 for defendants in error and in refusing to give instruction 5 requested by plaintiffs in error. We have carefully considered the criticisms directed against these instructions. The object of this bill was to obtain a judicial determination of the question whether the testator was of sound and disposing mind at the time he executed his will. Under issues properly formed that question has been determined, and plaintiffs in error, by failing to argue the question, impliedly admit that it was properly determined. We have stated the substance of the testimony for the purpose of showing that the only issue before the jury was determined in the only way, under the facts, it could have been properly decided. Under the showing in this

record it is not possible for plaintiffs in error to sustain their bill. In this situation any error that may have intervened in the rulings of the court on instructions could not result in harm to plaintiffs in error, nor would it benefit them in any way to reverse the decree and remand the cause for another trial, even if we thought there was such error in the instructions as would require a reversal were the questions before the jury close upon the facts. Where, as in this case, upon a consideration of the whole evidence this court is of the opinion that substantial justice has been done, and that the instructions, although erroneous, could not, under the circumstances, have affected the result, it will not reverse for that reason. And the same rule will apply to a refused instruction which should have been given. *Beard* v. *Maxwell,* 113 Ill. 440; *City of Decatur* v. *Besten,* 169 id. 340.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*