### Charles E. Stewart, Appellee, v. J. M. Clark, James T. R. Rutledge, Abner J. Dodson and George W. Stubblefield, Appellants.

1. FRAUD, § 115*—*sufficiency of evidence in action for misrepresenting financial worth of person.* A verdict for the plaintiff *held* sustained by the evidence, in an action for fraud and deceit in inducing the plaintiff to sell chattels on credit to a third person, by misrepresenting his financial worth and the value of notes put up by him as collateral security.

2. APPEAL AND ERROR, § 1421*—*when technical errors not ground for reversal.* Technical errors in admitting evidence or in giving or refusing instructions will not justify the reversal of a judgment which is sustained by the evidence, where the merits are with the appellee.

3. APPEAL AND ERROR, § 1186*—*when denial of excessive number of requested instructions not error.* Where an unreasonable number of instructions are requested, a judgment will not be reversed for slight errors in refusing some of them.

4. INSTRUCTIONS, § 94*—*as to disregarding testimony of witnesses testifying falsely.* An instruction that the jury should disregard all of the testimony of a witness who wilfully and knowingly testified falsely to any material fact, except in so far as he was corroborated by other credible evidence or facts and circumstances, *held* not reversible error, where the facts and circumstances of the case were not close and conflicting on any material question.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Stewart v. Clark et al., 194 Ill. App. 2.

5. FRAUD, § 118*—*damages for misrepresenting financial condition of person.* In an action for fraud and deceit for inducing the plaintiff to sell chattels to a third person on credit, by misrepresenting his financial condition and the value of notes put up by him as collateral, the plaintiff may recover as damages money paid one of the defendants as a commission for making the sale.

6. FRAUD, § 115*—*damages for misrepresenting person's financial condition.* The measure of damages in an action for fraud and deceit in inducing the plaintiff to sell chattels to a third person on credit, by misrepresenting his financial condition and the value of notes put up by him as collateral security, is the difference between the actual value of the notes and what their value would have been had the representations been true.

7. FRAUD, § 135*—*instructions as to damages for misrepresenting person's financial condition.* An instruction in an action for fraud and deceit, in inducing the plaintiff to sell chattels to a third person by misrepresenting his financial condition and the value of notes put up by him as collateral security, to the effect that the measure of damages was the agreed price, together with money paid one of the defendants as a commission for making the sale, *held* harmless error, where the notes, if of any value, were unavailing to the plaintiff.

8. APPEAL AND ERROR, § 1387*—*when error in admission of evidence not reversible error.* Errors in the admission of evidence will not be considered by the Appellate Court where they are so superficially presented that it is impossible to tell wherein the errors lie.

9. APPEAL AND ERROR, § 1160*—*when rehearing not granted on questions not raised on original hearing.* A rehearing will not be granted by the Appellate Court for the purpose of reviewing questions not raised on the original hearing.

10. FRAUD, § 59*—*when return of collateral condition precedent to action for misrepresenting person's financial condition.* Before bringing an action for fraud and deceit in inducing the plaintiff to sell chattels to a third person on credit, by misrepresenting his financial condition and the value of notes put up by him as collateral, the plaintiff need not return the notes to the latter, where he was not a party to the action.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed May 26, 1915. *Certiorari* denied by Supreme Court (making opinion final).

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

STEAD, WOODWARD & HIBBS, HART, FLEMING & PRATT and S. P. ROBINSON, for appellants.

WELTY, STERLING & WHITMORE, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Appellee recovered a judgment against appellants for damages in the sum of $3,489.65 in an action on the case for fraud and deceit, to reverse which this appeal is prosecuted.

The declaration consists of two counts which are not materially different, and aver, in substance, that on March 24, 1911, appellee, a resident of McLean county, was owner and possessed of eight head of percheron and coach horses of the value of $4,000; that appellants, together with J. M. Clark, wickedly contriving and conspiring together to cheat, wrong and defraud appellee, and to obtain possession of the horses without paying him the value of the same, applied to appellee to sell to said Clark the horses upon a credit of four months' time; that for the purpose of inducing appellee to sell to Clark, who was then unknown to appellee and who was without money or property and wholly worthless financially, appellants falsely and fraudulently represented to appellee that Clark was a man of property and means, an extensive dealer and trader in horses, that he was able to pay for said horses and would put up good collateral security sufficient to secure the payment of the purchase price thereof, and that the securities put up on behalf of Clark as collateral were valuable and ample security for the purchase price; that on the faith of said representations that Clark was a responsible party financially and his securities valuable, and relying upon the same and believing the same to be true, appellee sold to Clark the horses for $3,000 upon a credit of four months' time; that said representations were each and

all utterly false and untrue at the time they were made and that appellants knew them to be untrue; that they were made for the sole purpose of defrauding appellee as aforesaid; that said Clark at the time was wholly insolvent and that said collateral securities were wholly worthless, all of which was known to appellants at the time.

An opinion was rendered by this court at the October term, 1914, affirming the judgment and at said term a rehearing was granted. The errors assigned and relied upon to reverse the judgment are: First, that the verdict is contrary to the manifest weight of the evidence; second, in the giving and refusing of instructions; and third, in the admission of evidence.

Much evidence was taken in the case, making the record very voluminous, and no useful purpose would be served in attempting to discuss it in this opinion. After again carefully considering all the evidence introduced, we are convinced that it fully sustains the verdict of the jury on the facts and that the merits of this case are with appellee. This being true, mere technical errors on the admission of evidence or the giving or refusing of instructions will not justify a reversal of the judgment. *Ford v. Ford,* 257 Ill. 341; *Lehigh Valley Transp. Co. v. Post Sugar Co.,* 228 Ill. 121; *City of Beardstown v. Clark,* 204 Ill. 524; *Swisher v. Deering,* 204 Ill. 203; *Town of Wheaton v. Hadley,* 131 Ill. 640.

Sixty-nine instructions were offered on behalf of appellants. The court gave sixteen of these, apparently covering every phase of the case. Fifty-three were refused, and the refusal of a large number of these is assigned as error. In reference to the offering of such an unreasonable number of instructions, we quote from the language of the Supreme Court in the case of *Clifford v. Pioneer Fire-Proofing Co.,* 232 Ill. 150:

"The attorneys for appellant presented to the court

forty-seven instructions, of which the court gave to the jury twenty-three and the rest were refused. It would be impossible to formulate forty-seven different propositions of law relating to the issues in this case, and the instructions were necessarily mere repetitions of the same principles, so far as they stated the law and were applicable to the case. The court gave several instructions on each of the material propositions and would have been justified in refusing many that were given. While attorneys have a right to present to the court as many instructions as they deem necessary, they must, of course, expect that if they present such a number as were offered in this case they will, of necessity, receive but hasty and scant attention. Useless burdens were imposed upon the trial court in the examination of the volume of instructions offered, and in such a case a court of review would be very loath to reverse a judgment if some slight error had been committed by the court.''

The above case is pertinently applicable to the case at bar.

It is most earnestly contended, however, that the giving of two instructions on behalf of appellee constitute reversible error. Instruction No. 2, given, is as follows:

''The court instructs the jury, that if you believe from the evidence in this case that any witness has wilfully and knowingly testified falsely to any material fact in this case, then you may entirely disregard all of the testimony of such witness, except in so far as the testimony of such witness may be corroborated by other credible evidence or facts and circumstances shown in this case which you do believe.''

The giving of one substantially similar in the case of *Chicago & A. R. Co. v. Kelly*, 210 Ill. 449, was held to be reversible error. In connection with the giving of the instruction in that case, the court said:

''There was upon the question of the length of time the train stopped at the Braidwood station,—which was a material question,—a sharp conflict in the evi-

dence, and in that state of the record it was important that the jury should have been correctly instructed as to the law of the case, especially as to the rule which should govern them in weighing the evidence of the respective witnesses."

It is insisted by appellee that under the rules of grammatical construction, the words "which you do believe" qualify the words "facts and circumstances," not the words "credible evidence," and for this reason this instruction is distinguishable from that in the *Kelly* case, *supra*. Whether this contention be correct or not, we do not think that the facts in this case are so close and conflicting on any material question that the giving of the instruction was so prejudicial as to constitute reversible error.

The seventh instruction given for appellee is as follows:

"The court instructs the jury, that if you find the issues for the plaintiff then in assessing plaintiff's damages you should allow the plaintiff the amount agreed upon by said parties as the purchase price of said horses, and such money as you find from the evidence, if you do so find, was paid to the defendant Dodson, as commission on the sale of said horses, and interest on such sums at the rate of five per cent. per annum from the date that said horses were sold."

Appellants claim that this instruction does not announce a correct rule for the measure of damages for two reasons: First, it includes the commission paid by appellee to appellant Dodson; and second, that the true measure of damages is the difference between the fair cash market value of the horses and the value of the notes given in payment therefor.

The evidence shows that appellant Dodson, while pretending to act as agent for appellee, was, in fact, in the conspiracy with the other appellants to defraud appellee out of the horses by palming off on him the worthless notes in question. Appellee paid Dodson $100 as his commission for procuring the sale of the

horses. This is an action for fraud and deceit, and the procurement of the payment of this commission by fraud was an element of damage which appellee had a right to recover.

The rule as to the measure of damages, eliminating the question of a commission, presented by the second objection of appellants to the instruction cannot be sustained. The value of the horses was not in question. The price had been fixed by the parties themselves at $3,000. Appellee was entitled to the benefit of his bargain. The gravamen of the action was the fraud and deceit in representing to appellee the value of the notes given in consideration for the horses, and the damage which appellee was entitled to recover was the difference between the actual value of the notes and what their value would have been if the representations made had been true. *Schwitters v. Springer,* 236 Ill. 271. The declaration alleges that the notes were worthless and of no value. The proof for appellee tended to show that they were worthless, and the contention of appellee throughout the case was that they were of no value. While this instruction does not announce the rule as to the measure of damages as a technical abstract proposition of law, yet it tells the jury that if it should find from the evidence the issues in favor of the plaintiff, that is, the issue, among others, that if these notes were fraudulently represented to appellee to be good when they were in fact worthless, then it should allow the plaintiff the amount agreed upon by the parties as the purchase price of the horses. The principal note given by Clark to appellee for $3,000 representing the purchase price for the horses was beyond any question absolutely worthless. Clark was simply a straw man who owned no property of any kind and as soon as the transaction was consummated left for the State of Oregon. The two collateral notes, secured by a third mortgage on certain residence property for $2,400 each, executed

by a man by the name of Allen, a resident of Missouri, payable to Clark and delivered to appellee with Clark's note, were not indorsed by Clark, and there was no assignment of the mortgage by Clark to appellee. Assuming that these collateral notes, supposedly secured by the third mortgage on the property, represented an equity in the property of some value, then when the principal note executed by Clark, payable to appellee, for $3,000 became due, appellee had as consideration for his horses, (1) the worthless Clark note; and (2) the two collateral notes executed by said Allen, payable to Clark, unindorsed, non-negotiable and not due, supposedly secured by a third mortgage, unassigned, on property, the highest value of which any witness for appellants has placed thereon being $5,000, and on which were two prior mortgages amounting to $3,000 and accumulated interest. There was no contract that the collateral could be sold and the proceeds applied on the Clark note. Clark, the maker of the principal note had fled from the State, and Allen, maker of the collateral notes was a resident of Missouri. Under the above facts, in what way could appellee realize anything from these alleged collateral notes? No method has been suggested by counsel. If there is any it certainly would be an onerous one. It has been held that if the diligence which is necessary to preserve the value of collateral security be onerous or hazardous, its assumption may be declined altogether. *Trotter v. Crockett,* 2 Port. (Ala.) 401. If these collateral notes did in fact have some value, they were unavailing, and as a matter of law worthless, to appellee. Under these circumstances this instruction could have worked no harm to appellants.

In the original brief and argument of appellants several criticisms in regard to the admission of evidence were made, but are so superficially presented that it is impossible to tell therefrom wherein errors

were committed.    We illustrate the following instances:

"Dodson had two barns, one a sale barn and the other a feed barn, in Normal.    The Hartley horses were put in one barn and the Stewart horses were put in the other.    These two lots of horses both belonged to Clark.    Dodson was called out of town, and before he went he told Cochrane, a colored barn hand, to lock the barn, so that no one could get the horses.    There was a feed bill running against each bunch of horses, and Dodson wanted to protect himself as to this feed bill.    Anyone knows that the sheriff could take the horses, lock or no lock, and it was folly to think that Dodson was attempting to keep the horses from the sheriff by that sort of means.    Appellants offered to show there was a feed bill against the horses after appellee had insinuated before the jury that the reason the barn was locked was because Dodson was afraid that the deputy sheriff would take away the horses. Appellants contend that the trial court erred in refusing to allow the real facts to be shown by them."

Again it is stated in the argument:

"Appellee also introduced evidence in this case over the objection of appellant as to the Hartley transaction in Iowa.    Appellant now contends that the trial court grossly erred in allowing this evidence to go to the jury, and if he did not err in allowing appellee to introduce this evidence then the court surely erred in not allowing appellants to go into the whole transaction on cross-examination and show what they proposed to show and made an offer to show."

This court cannot review and pass upon such abstract propositions of error presented in this way. In the petition for rehearing the argument in regard to these errors is elaborated and an attempt is made to show wherein the admission of this evidence is erroneous.    Petitions for rehearing are never granted for the purpose of presenting points not raised on the original hearing.

It is further insisted that appellee should have of-

fered to deliver back the notes received by him in payment for said horses. This was an action for fraud and deceit and not an action for breach of a contract. The contract for the sale of the horses was ostensibly made with Clark, who was not served with summons in this case, is not a party to the judgment herein, and a tender back of the consideration to the other defendants, appellants herein, was not necessary. *Siltz v. Springer,* 236 Ill. 276; *Allin v. Millison,* 72 Ill. 201.

The judgment of the Circuit Court will be affirmed.
*Affirmed.*