(No. 14636.—Decree affirmed.)
FRANK C. BARNES *et al.* Appellants, *vs.* JAMES CARMEN
ODUM *et al.* Appellees.

*Opinion filed October 21, 1922.*

1. WILLS—*when non-expert witnesses may express opinions as to mental capacity.* Non-expert witnesses may express their opinions as to the sanity of a testator or testatrix where they have related circumstances and observations upon which such opinions are based.

2. SAME—*what may be shown on issue of mental capacity.* On the issue of mental capacity in a will contest it is proper to show the circumstances attending the execution of the will, the family relations, the inequality of the distribution and the facts in explanation thereof, and, under some circumstances, the source and extent of the estate, the financial condition of the relatives if known to the testator or testatrix, advancements to any of them, and other facts which might show the relation of the distributees.

3. SAME—*when evidence of advancements to grandsons is admissible on issue of mental capacity.* On the issue of mental capacity in a will contest case it is proper to prove that the testatrix had previously given certain bank stock to her grandsons, where the will states that she had advanced to each of the grandsons a certain sum of money corresponding to the value of such stock, as such evidence tends to show that the testatrix knew the nature and extent of her property and the natural objects of her bounty and the extent to which a part of their natural claims had been satisfied.

4. SAME—*jury may be instructed as to degree of mental capacity required to dispose of large estate—reversal.* On the issue of mental capacity in a will contest case the jury may be instructed that the same capacity may not be required to dispose of a small estate as is required to comprehend the details involved in the intelligent disposition of a large estate, but the refusal of such instruction is not ground for reversal where the ruling is not prejudicial.

APPEAL from the Circuit Court of White county; the Hon. J. C. EAGLETON, Judge, presiding.

ROY E. PEARCE, and CREIGHTON & THOMAS, for appellants.

GEE & GEE, and JOE A. PEARCE, for appellees.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of
the court:

Harriet A. Miller died testate November 26, 1920, leav-
ing as her heirs-at-law eight great-grandchildren. She had
but one daughter who lived to maturity. To this daugh-
ter were born four children, Carrie, Claud, Joe and Grace.
The daughter, with her husband and children, lived in the
home of her parents until her death, in 1891. Thereafter
the grandchildren, with their father, lived at the home
of the grandparents until they were married. Carrie died
leaving five children, Laura, Susan, Ida, John and Carrie;
Claud died leaving one child, Harriet; Joe died leaving
one child, Frank; and Grace died leaving one child, James.
The husband of testatrix died about 1910. When testa-
trix died she was eighty-three years of age. The Chapman
children were all adults, and all were married except Car-
rie. James Odum was about nineteen years of age, Harriet
Barnes thirteen and Frank Barnes eight. The will of tes-
tatrix, executed August 16, 1920, gave to her great-grand-
son James forty acres of land, her home in Carmi, including
her household furniture, and $4000 worth of bank stock.
All the residue of her estate, amounting to more than
$75,000, invested largely in notes and government bonds,
she gave to her eight great-grandchildren, share and share
alike, except that she charged the shares of the appellants,
Harriet and Frank, with $11,000 each, explaining that she
had theretofore advanced that amount to their respective
fathers, her grandsons Claud and Joe. This bill was filed
in the circuit court of White county charging undue influ-
ence and want of mental capacity. There was no proof of
undue influence. About forty witnesses, twenty-eight for
proponents and twelve for contestants, testified concerning
the mental capacity of testatrix. There was a verdict sus-
taining the will, a decree on this verdict and an appeal to
this court.

304—40

Appellants contend that the court erred in admitting improper evidence on behalf of proponents; in refusing to admit proper evidence offered by contestants; in giving improper instructions for proponents; and in refusing and improperly modifying proper instructions offered by the contestants.

The point most strongly argued by counsel for appellants, and the one on which they seem to rely for a reversal of this decree, is that the court permitted non-expert witnesses to express opinions regarding the mental condition of testatrix. The question was raised by the following objection: "That question is objected to on the ground that it is improper and incompetent, and that the witness has no right, being a lay witness, to state an opinion. He may state the facts and circumstances, conversations and all of his observations, and leave it to the jury to determine whether she is or is not of sound mind and memory. Further, an opinion as to whether she is of sound mind and memory or not is a question which this jury must determine from the facts and not from the opinion of lay witnesses." This objection was overruled.

Appellants rely on *Baddeley* v. *Watkins,* 293 Ill. 394, as authority for their contention, but the holding in that case is to the contrary. We there said: "Opinions of non-expert witnesses are admissible in cases of this character where such opinions are based upon the knowledge and observations of the witnesses. * * * When a witness testifies from observation of a man that he is young or old, sober or intoxicated, pleased or angry, sane or insane, his testimony is not mere opinion,—it is knowledge; but it is knowledge gained from an observation of numerous and subtle characteristics, which would be difficult, if not impossible, to adequately describe to the jury except by stating the conclusion naturally reached by the mind of the observer." Beginning with *Roe* v. *Taylor,* 45 Ill. 485, this court has consistently held that a non-expert witness, after

detailing the facts on which an opinion concerning the testator's mental condition is based, may give to the jury that opinion, to be received by them and to be valued by them according to the intelligence of the witness and his own capacity to form the opinion. This holding is in accord with the great weight of authority in other jurisdictions. In *Connecticut Mutual Life Ins. Co.* v. *Lathrop*, 111 U. S. 612, 4 Sup. Ct. 533, it is said: "Whether an individual is insane is not always best solved by abstruse metaphysical speculations expressed in the technical language of medical science. The common sense, and, we may add, the natural instincts, of mankind reject the supposition that only experts can approximate certainty upon such a subject. There are matters of which all men have more or less knowledge, according to their mental capacity and habits of observation,—matters about which they may and do form opinions sufficiently satisfactory to constitute the basis of action. While the *mere* opinion of a non-professional witness predicated upon facts detailed by others is incompetent as evidence upon an issue of insanity, his judgment based upon personal knowledge of the circumstances involved in such an inquiry certainly is of value, because the natural and ordinary operations of the human intellect, and the appearance and conduct of insane persons as contrasted with the appearance and conduct of persons of sound mind, are more or less understood and recognized by everyone of ordinary intelligence who comes in contact with his species. The extent to which such opinions should influence or control the judgment of the court or jury must depend upon the intelligence of the witness as manifested by his examination and upon his opportunities to ascertain all the circumstances that should properly affect any conclusion reached. * * * The truth is, the statement of a non-professional witness as to the sanity or insanity, at a particular time, of an individual whose appearance, manner, habits and conduct came under his personal observation is not the expression

of mere opinion. In form it is opinion, because it expresses an inference or conclusion based upon observation of the appearance, manner and motions of another person, of which a correct idea cannot well be communicated in words to others without embodying, more or less, the impressions or judgment of the witness. But in a substantial sense, and for every purpose essential to a safe conclusion, the mental condition of an individual, as sane or insane, is a fact, and the expressed opinion of one who has had adequate opportunities to observe his conduct and appearance is but the statement of a fact; not, indeed, a fact established by direct and positive proof, because in most, if not all, cases it is impossible to determine with absolute certainty the precise mental condition of another, yet being founded on actual observation, and being consistent with common experience and the ordinary manifestations of the condition of the mind, it is knowledge so far as the human intellect can acquire knowledge upon such subjects." In *Austin* v. *Austin,* 260 Ill. 299, we placed the testimony of expert and non-expert witnesses upon the subject of mental capacity on the same plane. The court properly permitted the witnesses to express their opinions.

Appellees were permitted to prove, over the objection of appellants, that testatrix had on February 25, 1911, transferred to her grandsons Claud and Joe Barnes 230 shares of stock in the First National Bank of Carmi, which were of the par value of $100 a share and which at that time were worth more than par. When want of testamentary capacity is charged in a bill to contest a will it is proper to show the circumstances attending the execution of the will, the family relations of the testator and the equality or inequality of the distribution of the estate among the natural objects of testator's bounty. If there are any provisions of the will which might appear, without explanation, to be unnatural or inequitable, it is proper to explain these provisions in order to rebut any inference of incapacity that

might be drawn therefrom. Under some circumstances it is proper to show the source and extent of the estate, the financial condition of relatives if known to the testator, the extent to which testator has aided or has failed to aid his relatives, and other facts which might show the relations of testator to the distributee. (14 Ency. of Evidence, 315; *Piper* v. *Andricks,* 209 Ill. 564; *Dillman* v. *McDanel,* 222 id. 276; *Wilkinson* v. *Service,* 249 id. 146.) It was proper to show the gift of this bank stock to these grandsons so that the jury might know that the statement in the testatrix's will that she had advanced to each of them $11,000 was true. It tended to show that testatrix not only knew the nature and extent of her property and the natural objects of her bounty, but that she knew the extent to which a part of the natural claims of her descendants had been satisfied.

Other questions regarding the admission and exclusion of evidence are argued. We have examined these objections and do not regard any of them of sufficient importance to require detailed discussion. No substantial error was committed by the trial court by its rulings.

Finally, appellants contend that the court erred in giving, refusing and modifying instructions. While some of the instructions given on behalf of proponents are argumentative and contain inaccurate statements of the law there is no reason to conclude that the jury were misled by them. The court properly refused and modified the instructions offered by contestants, either because they did not state the law or were substantially covered by other given instructions. The only exception is instruction No. 33, which told the jury "that the capacity to comprehend a few simple details, if the estate be small, might qualify a person, in that case, to intelligently dispose of his property by will, which if the estate be large, requiring the remembrance of many facts and the comprehension of many details, and the disposition to be made is complicated, the same mental capacity

may be wholly insufficient, to the intelligent understanding of the business requisite to the making of a valid will." This instruction was not covered by other given instructions and it might well have been given. Taking the instructions as a series they fairly state the law applicable to this case, and no substantial harm was done appellants by the court's rulings on instructions.

The testimony preponderates so clearly in favor of the testamentary capacity of testatrix that appellants make no contention that the verdict is not well supported. Under the evidence in this record it is the only verdict that could be sustained. Where this is the situation no good could come from reversing a decree for technical error and remanding the cause. (*Ford* v. *Ford,* 257 Ill. 341.) It is our opinion that when the whole evidence is considered substantial justice has been done, and the decree is therefore affirmed.

*Decree affirmed.*