MADIGAN, INCORPORATED et al.,
Plaintiffs,

v.

Gilbert GOODMAN et al., Defendants.

Nos. 72 C 1338, 70 C 2151.

United States District Court,
N. D. Illinois, E. D.

March 28, 1973.

See also, D.C., 57 F.R.D. 512.

**1332**

---

Kirkland & Ellis, Chicago, Ill., for plaintiffs.

Sheldon O. Collen, Sheldon Karon and Joseph A. Spitalli, James K. Gardner, Griffin, Guinan & Griffin, Russell J. Topper, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on defendants' (Gilbert Goodman, Edward Hollander and Sidney L. Morris) motion to dismiss the complaint or alternatively for summary judgment.

This action was brought to recover damages for alleged fraudulent misrepre-

sentations in the sale of a security in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10B–5, 17 C.F.R. 240.10b–5 promulgated thereunder and Illinois common law fraud. The plaintiffs are a group of corporations and individuals including Madigan, Incorporated (hereinafter jointly referred to as the Madigan Group) who purchased Fidelity General Insurance Company ("Fidelity") stock. The defendants are Gilbert Goodman and Clyde L. Korman, who are officers, directors and shareholders of Fidelity; Samuel Jastromb, Samuel Bernstein, Edward Hollander and Sidney L. Morris, who are directors and shareholders of Fidelity; Fred H. Pearson, who is a shareholder of Fidelity; and Tom I. McFarling, who is the Receiver of Dealers National Insurance Company and Liberty Universal Insurance Company and presently has title to 1,071,650 shares of the common stock of Fidelity. These defendants have allegedly made false representations concerning the financial condition of Fidelity to the detriment of the Madigan Group.

The following facts are relevant to the proper disposition of the instant motion. On December 20, 1968, Mading-Dugan Drug Company (the predecessor to Madigan, Inc.) purchased 51% of the common stock of Fidelity from the defendants and other shareholders for the sum of $1,750,895 in cash. At the same time, Mading-Dugan contracted to make a tender offer for the remaining Fidelity shares before June 30, 1969.[1]

On or about May 13, 1969, Mading-Dugan sold the Fidelity stock it had purchased from defendants to Contran Corporation ("Contran") for 250,000 shares of Contran common stock, the value of which was approximately $1,-750,895.[2]

On or about September 19, 1969, Contran sold all of the Fidelity General stock that it had acquired from Mading-Dugan

---

1. See paragraph 8 of the Complaint.

2. See Plaintiffs' Answer to Defendants' Interrogatories, Set One, Interrogatory No. 5.

to Texas Consumer Finance Corp. for $1,750,895 in cash.[3]

At the time that Contran purchased Fidelity stock, Contran agreed to assume Mading-Dugan's obligation to make the tender offer for the remaining Fidelity shares.[4] Contran subsequently assigned the obligation to make the tender offer to Texas Consumer Finance Corp. Between June and August, 1969, Texas Consumer Finance Corp. purchased 502,-845 shares of Fidelity from shareholders other than defendants.

Plaintiffs allege that the defendants' false and misleading representations concerning Fidelity's financial condition caused the following damages:

1. Plaintiffs have lost the amount paid for Fidelity stock (Complaint paragraphs 18(a) and 41(a)).

2. Plaintiffs have lost additional capital contributed to prevent the insolvency of Fidelity and the profits and other benefits that they reasonably could have expected to receive from the purchase of Fidelity stock had its financial condition been what the defendants represented it to be (Complaint paragraphs 18(b) and 41(b)).

3. Plaintiffs have incurred and will continue to incur substantial expenses in defending lawsuits (Complaint paragraphs 18(c) and 41(c)).

4. Plaintiffs have been unable to plan and conduct their financial affairs as a result of such litigation (Complaint paragraphs 18(d) and 41(d)).

The defendants Gilbert Goodman, Edward Hollander and Sidney L. Morris, in support of their motion contend:

1. Plaintiffs have suffered no damage attributable, as a matter of law, to any of the acts allegedly performed by defendants.

2. Certain plaintiffs do not have standing to assert a claim under

Section 10(b) of the Securities Exchange Act of 1934 and the Rules promulgated thereunder.

3. Plaintiffs' claims are barred by the applicable statute of limitations.

The plaintiffs, in opposition to the instant motion, contend that their losses exceed two million dollars as a result of the fraudulent conduct of defendants and that the Madigan Group has been exposed to claims exceeding $48 million in case of Baylor, Director of Insurance v. Mading-Dugan Drug Company et al., D.C., 57 F.R.D. 509 ("Liquidator's case") which has been consolidated with the instant action.

It is the opinion of this Court that since the plaintiffs have resold the securities purchased from the defendants for the same price at which those securities were acquired, plaintiffs have suffered no loss and thus have no cause of action.

*I. Plaintiffs have suffered no damages which are legitimately attributable to the alleged acts of the defendants or recoverable under the Securities Exchange Act.*

■■ It is well settled that the failure to show actual damages is a fatal defect in bringing a cause of action based on the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. This legislation permits recovery of actual damages based on violations of the Act. "Actual damages" for one who through fraud or misrepresentation has been induced to purchase bonds or corporate stock, is the difference between the contract price, or the price paid, and the real or actual value at the date of the sale, together with such outlays as are attributable to the defendants' conduct. In other words, the federal rule of damages for such fraud is an "out of pocket rule", the difference between the amount parted with and the value of the thing received. Smith v. Bolles, 132 U.S. 125,

---

3. Texas Consumer Finance Corp. is not a party to this action. See Id.

4. See Complaint paragraph 9.

10 S.Ct. 39, 33 L.Ed. 279 (1889); Sigafus v. Porter, 179 U.S. 116, 21 S.Ct. 34, 45 L.Ed. 113 (1900); Hindman v. First National Bank, 112 F. 931 (6th Cir. 1902), cert. denied, 186 U.S. 483, 22 S.Ct. 943, 46 L.Ed. 1261; Tooker v. Alston, 159 F. 599 (8th Cir. 1907); Chandler v. Andrews, 192 F. 543 (2nd Cir. 1911); Nashua Savings Bank v. Burlington Electric Lighting Co., 100 F. 673 (S.D. Iowa, 1900); Morris v. United States, 303 F.2d 533 (1st Cir. 1962); Mott v. Tri-Continental Financial Corporation, 330 F.2d 468 (2nd Cir. 1964).

The pleadings and recent pre-trial discovery demonstrate that the plaintiffs have failed to properly show actual damages based on the alleged violation.

### A. Damages based on loss of purchase price.

Plaintiffs claim in paragraphs 18(a) and 41(a) of their Complaint that they have lost $3,322,155, the price paid for 1,067,650 shares of Fidelity common stock. As noted earlier, the Fidelity stock was purchased in two transactions. 564,805 shares were purchased from defendants and other shareholders by Mading-Dugan in December, 1968, and 502,845 shares were purchased by Texas Consumer Finance Corp. ("TCFC") pursuant to a tender offer between June and August, 1969.

With respect to the Fidelity stock purchased in December 1968 from defendants, the following facts have been disclosed during pre-trial discovery.[5]

1. Mading-Dugan Drug Company purchased all of the Fidelity General shares transferred in December 1968 for $1,750,895 in cash.

2. In May, 1969, Mading-Dugan sold those Fidelity shares to Contran in exchange for 250,000 shares of Contran stock. The Contran stock was valued, by the seller and buyer, at 20% below its market value of $8.50 per share. Thus the total value of Contran shares traded approximately equaled the amount at which Mading-Dugan had originally purchased the Fidelity shares.

3. In September, 1969, Contran sold all of the Fidelity shares it had purchased from Mading-Dugan to Texas Consumer Finance Corporation for $1,750,895 in cash, the same amount Contran had paid in Contran stock, and the same amount Mading-Dugan had earlier paid in cash in acquiring the Fidelity stock.

Plaintiffs Madigan and Contran therefore fully recovered the purchase price that they paid for Fidelity stock. Thus there is no out of pocket loss or actual damages to the plaintiffs in their purchase of Fidelity stock.

The Fidelity stock purchased pursuant to the tender offer during the summer of 1969 was not purchased by any of the plaintiffs, but was purchased by Texas Consumer Finance Corporation, Trans-Texas Life Insurance and Consumers Casualty Company.[6]

No other plaintiff purchased or held Fidelity stock at any time.[7] Kaufman

---

5. See Plaintiffs' Answer to Defendants' Interrogatory No. 5.

6. See Plaintiffs' Answer to Defendants' Interrogatories, Set One, Interrogatory No. 2.

7. See Plaintiffs' Answer to Defendants' Interrogatories, Set One, Interrogatory No. 4. The plaintiff Madigan Incorporated contends that it paid $18,384 as a commission to the broker who assisted in the negotiations for the December, 1968, acquisition of Fidelity securities by the Madigan Group. The plaintiffs claim that such a commission is properly recoverable as an element of damages since it would not have been paid had it not been for the fraudulent misrepresentations of the Fidelity sellers. Stewart v. Clark, 194 Ill.App. 2, 7–8 (1915). However, plaintiffs fail to cite any support for recovery of such a damage under federal law. In fact, under the "out of pocket rule" the plaintiff Madigan sold the stock for what it purchased it for and thus was not damaged. Chasins v. Smith Barney & Co., 438 F.2d 1167 (2nd Cir. 1970).

v. Mellon National Bank and Trust Company, 366 F.2d 326 (3rd Cir. 1966); Chaney v. Western States Title Insurance Company, 292 F.Supp. 376 (D.Utah, 1968). Further, plaintiff's answer to Interrogatory No. 31(a) is illustrative of the lack of damages flowing from the purchase of Fidelity stock. Interrogatory No. 31(a) states:

> State what portion of the $3,332,155, if any, plaintiffs claim in paragraph 18(a) of the Complaint to have lost is allocable to you.

The answer given for all plaintiffs states:

> None.

### B. Damages based on loss of profits and other expected benefits.

■ It it clear that the question of damages turns not on what the plaintiffs might have gained, but what has been lost by being allegedly deceived into a purchase. The defendants are liable for such damages as naturally and proximately resulted from the alleged fraud; they are bound to make good the loss sustained. More specifically, the defendants are liable for losses as the plaintiff has sustained, with interest, and any other outlay legitimately attributable to the defendants' fraudulent conduct. It is clear that liability does not include the speculative fruits of unrealized profit. Smith v. Bolles, *supra*; Estate Counseling Service v. Merrill, Lynch, Pierce, etc., 303 F.2d 527 (10th Cir. 1962). Thus the plaintiff cannot recover the expectant profits claimed in paragraph 18 (b) of the Complaint.

The plaintiffs also claim that they incurred great cost and expense in undertaking certain steps to prevent Fidelity's insolvency. More specifically, plaintiffs identify these steps as: [8]

(a) Defendant Goodman was terminated as an officer of Fidelity on March 25, 1970.

(b) New management and personnel were brought into Fidelity in spring of 1970.

(c) In May of 1970 the plaintiffs, acting in conjunction with the Illinois Department of Insurance, initiated a plan of redirection for Fidelity General.

(d) An underwriting review of Fidelity General was made.

(e) On April 30, 1970, a $500,000 contribution to the capital of Fidelity was made.

(f) Reinsurance was instituted to shift some of the losses to Texas companies.

More specifically regarding (f), plaintiffs allege that plaintiff Madigan, Inc., has also suffered other damages in the amount of $2,053,629 as a result of the defendants' fraud. Losses in that amount were allegedly absorbed by Madigan in 1969 as a result of a reinsurance agreement between Fidelity and Dealers National Insurance Company, a subsidiary of Madigan, Inc.[9]

■■ These alleged indirect injuries which plaintiffs seek to recover, all relate to matters which occurred after plaintiffs sold their stock. For the purpose of the Securities Exchange Act when plaintiffs sold their stock, their interest in the transaction and Fidelity terminated. Mott v. Tri-Continental Financial Corporation, *supra*.[10]

---

8. See Plaintiffs' Answer to Defendants' Interrogatories, Set One. Interrogatory No. 28(a).

9. See Plaintiffs' Answer to Interrogatory Nos. 31(f) and 31(g).

10. Even if Madigan owned the Fidelity stocks when losses in the amount of $2,053,629 were ceded to Dealers National, a subsidiary of Madigan, it is doubtful that such losses are properly recoverable in this action. Dealers National is in liquidation in Texas. Thus, Madigan cannot, *qua* shareholder, base a cause of action on an alleged derivative or secondary injury to Madigan as a result of an alleged primary injury to Dealers National. All claims of damages to a corporation in liquidation are only assertable by the liquidator of that corporation. See Texas Insurance Code, Art. 21.28, Sec. 2(b), V.A.T.S.

Thus, the plaintiffs have failed to show any damages due to lost profits and capital expenditures which are recoverable under the Security Exchange Act.

### C. Damages due to the expenses incurred in defending lawsuits.

■ In addition to the actual losses allegedly incurred as a result of alleged fraud of the defendant Fidelity sellers, the Madigan Group has been subjected to the claim, in the "Liquidator's suit," that they caused the insolvency and liquidation of Fidelity.[11] The plaintiffs allege in paragraphs 18(c) and 41(c) that they have incurred expenses in defending lawsuits resulting from their purchase of Fidelity stock from the defendants.[12] The cost of lawsuits, which is one basis for plaintiffs' allegation of damages, arose long after plaintiffs had divested themselves of all Fidelity shares at no loss whatsoever. There is no direct causal relationship between the commencement of the lawsuits and plaintiffs purchase of Fidelity stock.[13]

■ The plaintiffs have failed to cite any case in support of their theory that such damages as the cost of defending lawsuits which are at best indirectly related are recoverable under the Securities Exchange Act. Further, it is the opinion of this Court that such damages are not proper under the Act.[14]

### D. Damages due to the inability of the plaintiffs to plan and conduct financial affairs.

■ Plaintiffs allege in paragraphs 18(d) and 41(d) that they have been damaged in being "unable adequately to plan and orderly to conduct their financial affairs" as a result of the litigation referred to in paragraphs 18(c) and 41(c) of plaintiffs' Complaint. Again, these events arose after the plaintiffs sold their shares of Fidelity stock

11. More specifically, the cross claim filed in the "Liquidator's suit" by Texas Consumers Finance Corporation ("TCFC") alleges as a basis of recovery that the Madigan Group sold securities of Fidelity to TCFC when Fidelity was insolvent. To defeat the claims of the Liquidator and TCFC the Madigan Group alleges that it will demonstrate at trial that it was in no way responsible for the insolvency of Fidelity but rather that any insolvency was the result of the conduct of the defendant Fidelity sellers. Further, the Madigan Group will allegedly prove that it did not learn of Fidelity's insolvency until the commencement of this litigation, long after it had sold Fidelity securities to TCFC. Yet, the Liquidator's lawsuit is not a direct result of the violations alleged in the instant action nor are speculative damages based on the defense of the lawsuit a proper and recoverable damage under the Securities Exchange Act of 1934.

12. In their answers to Defendants' Interrogatories, Set One, Interrogatory No. 30, plaintiffs identify five lawsuits which they are defending, allegedly as a result of their purchase of Fidelity stock. It is clear that none of the five cases can be the basis for damages under the Act.

13. For example, the crux of the Liquidator's suit is that the plaintiffs (who are defendants in that action) made a bootstrap acquisition of an insurance company in violation of the federal securities laws. See Superintendent v. Bankers Life & Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). The complaint in that action alleges that the plaintiffs in the instant action caused Fidelity to sell approximately $6,000,000 in municipal bonds for cash using a portion of the proceeds to purchase over-valued securities issued or held by plaintiffs or their affiliator.

14. The plaintiffs contend that this Court's procedural ruling consolidating the instant action with the Liquidator's suit was a substantive legal determination that any damages suffered by plaintiffs are legitimately attributable to the conduct of the defendants. This interpretation of this Court's Memorandum Opinion and Order of December 8, 1972 is not correct. It is clear that consolidation does not affect any of the substantive rights of the parties nor does it freeze the course of future litigation of the cases. J. G. Link & Company v. Continental Casualty Company, 470 F.2d 1133 (9th Cir. 1972); Kelly v. Greer, 295 F.2d 18 (3rd Cir. 1961). Thus this Court's previous procedural ruling has no bearing on the instant motion to dismiss.

and again this speculative damage is not legitimately attributable to the defendants' alleged fraudulent conduct nor recoverable under the Securities Exchange Act.

It is apparent that, as a matter of law, the damages alleged by the plaintiffs are not "out of pocket" losses representing the difference between the amount parted with and the value of the thing received. Further, the damages alleged by the plaintiffs are not outlays legitimately attributable to the defendants' alleged fraudulent conduct.

The plaintiffs have failed to show any loss recoverable under the Securities Exchange Act. Thus, since the plaintiffs have not shown a loss recoverable under the statute, they fail to state a cause of action and the Complaint should be dismissed.

*II. The standing of certain plaintiffs to assert a cause of action under Rule 10b-5 is questionable.*

██ The defendants contend that certain plaintiffs lack standing to assert a cause of action under Rule 10b-5. Since the plaintiffs' Complaint is fatally defective, in not alleging damages recoverable under the statute, there is no need to decide whether certain plaintiffs have standing to assert a 10b-5 claim. In passing, the following is noteworthy. It is well settled that a plaintiff who is neither a purchaser nor a seller of securities does not have standing to assert a claim alleging a violation of Rule 10b-5. See Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir. 1952).

Pre-trial discovery has disclosed that the following plaintiffs have neither purchased nor sold Fidelity General stock at any time: Ward Cut-Rate Drug Co.; Mading-Dugan Drug Stores, Inc.; Harold Simmons; Glenn Simmons; Max

Blundell; D. Dale Wood; and John Brunson.[15]

Accordingly, it is hereby ordered that the defendants' motion to dismiss the Complaint is granted.

15. See Plaintiffs' Answer to Defendants' Interrogatories, Set One, Interrogatory. No. 4.