PAT MARR, Appellant, *v.* JOSEPH P. TUMULTY et al., as Receivers of the SOUTHERN STATES OIL CORPORATION, MIDDLE STATES OIL CORPORATION and GULF STATES OIL AND REFINING CORPORATION et al., Respondents, Impleaded with Others.

(Argued February 17, 1931; decided March 24, 1931.)

*Frank C. Laughlin, S. Lawrence Miller, Joseph W. Kirkpatrick* and *Stewart W. Bowers* for appellant. Plaintiff is entitled to rescind the contract under which the stock was exchanged on the ground that the defendant Southern States Oil Corporation with which he contracted fraudulently corrupted his agents and caused them to violate their fiducial relationship to him by paying them a bribe in money and stock. (*Donemar, Inc.,* v. *Molloy,* 252 N. Y. 360; *Knauss* v. *K. B. Co.,* 142 N. Y. 70; *Rintel* v. *Steinberg,* 225 App. Div. 891; 252 N. Y. 561; *Dickinson* v. *Tysen,* 209 N. Y. 395; *Erland* v. *Gibbons,* 176 App. Div. 552; *Jacobs* v. *Beyer,* 141 App. Div. 49; *Schank* v. *Schuchman,* 212 N. Y. 352; *Merchants Loan* v. *B. & O. R. R. Co.,* 222 N. Y. 344; *Sirkin* v. *Fourteenth Street Store,* 124 App. Div. 384; *Harrington* v. *Victoria Graving Dock Co.,* L. R. 3 Q. B. D. 549.) It is immaterial that the certificates of stock tendered by plaintiff were not the original certificates delivered to him, and that some of them bear dates subsequent to the institution of the action. (*Buffalo Builders Supply Co.* v. *Reeb,* 247 N. Y. 170; *Guckenheimer* v. *Angevine,* 81 N. Y. 394; *Butler* v. *Prentiss,* 158 N. Y. 49; *United Zinc Co.* v. *Harwood,* 216 Mass. 474; *Harris* v. *Equitable Life Assur. Soc.,* 64 N. Y. 196; *Bloomquist* v. *Farson,* 222 N. Y. 375; *Thackrah* v. *Haas,* 119 U. S. 499; *Hay* v. *Hay,* 13 Hun, 315; *Halpin* v. *Mutual Brewing Co.,* 20 App. Div. 583; *Pritz* v. *Jones,* 117 App. Div. 643; *Continental Securities Co.* v. *Belmont,* 206 N. Y. 713.) The Appellate Division erred in finding as a fact that the exchange of stock of the Marr Oil Corporation by plaintiff and his co-directors for stock of the Southern States Oil Corporation was negotiated and executed as an entire contract, and that plaintiff's tender was insufficient in that he failed to tender to Southern States Oil Corporation the

amount of stock received both by plaintiff and his co-directors upon the exchange of stock, together with all dividends received thereon by plaintiff and his co-directors. (*Tompkins* v. *Sheehan*, 158 N. Y. 617; *Portfolio* v. *Rubin*, 233 N. Y. 439; *Villard* v. *Mayer*, 123 App. Div. 629; *Heatter* v. *Day Publishing Co.*, 181 App. Div. 888; *Adriatic Fire Ins. Co.* v. *Treadwell*, 108 U. S. 361; *Ludlow* v. *McCrea*, 1 Wend. 228; *Doran* v. *Swift*, 1 Pen. [Del.] 457; *Bank of Antigo* v. *Union Trust Co.*, 149 Ill. 343; *DaPonte* v. *Simonian*, 127 Wash. 214; *Bamberger Bros.* v. *Burrows*, 145 Iowa, 441; *Thompson* v. *Fesler*, 74 Ind. App. 80.) Plaintiff, as a condition to a rescission in equity, is not required to tender stock received by the agents who were corrupted by the Southern States Oil Corporation. (*Hammond* v. *Pennock*, 61 N. Y. 145; *Butler* v. *Prentiss*, 158 N. Y. 49; *Guckenheimer* v. *Angevine*, 81 N. Y. 394; *Heckscher* v. *Edenborn*, 203 N. Y. 210; *American Surety Co.* v. *Conner*, 251 N. Y. 1; *Goins* v. *Atwood*, 204 App. Div. 439.) The stockholders of the Gulf States Oil Corporation have no such equitable interest in the Marr Oil Corporation stock exchanged by plaintiff as will defeat his right to a rescission of the transaction and the recovery of the stock transferred. (*Cox* v. *Stokes*, 156 N. Y. 491; *Holden* v. *New York & Erie Bank*, 72 N. Y. 286; *Cragie* v. *Hadley*, 99 N. Y. 131; *Title Guarantee & Trust Co.* v. *Pam*, 232 N. Y. 441; *Giles D. M. Co.* v. *Klauder-Weldon D. M. Co.*, 233 N. Y. 470; *Broad & Lackawanna Realty Co.* v. *Breitung*, 239 N. Y. 154; *Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58; *Shattuck* v. *Guardian Trust Co.*, 204 N. Y. 200; *Botway* v. *Schnitzer*, 217 App. Div. 468; *Crooks* v. *People's Nat. Bank*, 72 App. Div. 331; 177 N. Y. 68.) The complaint should not be dismissed if it should be determined that there was an insufficiency in the amount of the tender made by plaintiff, or that it was not in every respect proper in form, for a court of equity will mold the relief to the facts and circumstances of the particular case and provide in its decree for any adjustments of

equities between the parties and the conditions upon which the rescission of a contract and the restoration of the *status quo* of the parties thereto shall be effected. (*Gould v. Cayuga County Nat. Bank*, 86 N. Y. 75; *Butler v. Prentiss*, 158 N. Y. 49; *United Zinc Co. v. Harwood*, 216 Mass. 474; *Buffalo Builders Supply Co. v. Reeb*, 247 N. Y. 170; *Harris v. Equitable Life Assur. Soc.*, 64 N. Y. 196; *Bloomquist v. Farson*, 222 N. Y. 375; *Thackrah v. Haas*, 119 U. S. 499; *Baker v. Ziegler*, 56 Hun, 405; *Hay v. Hay*, 13 Hun, 315; *Halpin v. Mutual Brewing Co.*, 20 App. Div. 583; *Pritz v. Jones*, 117 App. Div. 643; *Continental Securities Co. v. Belmont*, 206 N. Y. 7; *Moore v. Mutual Reserve Fund Life Assn.*, 121 App. Div. 335.)

*John J. Curtin, Adelbert P. Rich, Wesley S. Sawyer* and *William R. Willcox* for respondents. Plaintiff not having tendered or offered to restore all of the property or benefits received in the trade, rescission was properly denied. (*Graham v. Meyer*, 99 N. Y. 611; *Schiffer v. Dietz*, 83 N. Y. 308; *Guggenheimer v. Angevine*, 81 N. Y. 394; *Cox v. Stokes*, 156 N. Y. 491; *Getty v. Devlin*, 54 N. Y. 403; *City of Ironwood v. Wickes*, 93 App. Div. 164; *Telford v. Metropolitan Life Ins. Co.*, 223 App. Div. 175; *Anderson v. Smithley*, 141 App. Div. 421.) Plaintiff has not and cannot restore the defendants to *status quo* and the complaint was properly dismissed on that ground. (*Gravenhorst v. Zimmerman*, 236 N. Y. 22; *Graham v. Meyer*, 99 N. Y. 611; *Cox v. Stokes*, 156 N. Y. 491; *Slater v. Slater*, 208 App. Div. 567; *Sheffield Nickel Co. v. Unwin*, L. R. 2 Q. B. D. 214; *Clarke v. Dickson*, L. J. [1858] Q. B. 223; *Snow v. Alley*, 144 Mass. 546.) The complaint was properly dismissed because the rights of innocent third parties had intervened. (*Beckwith v. Sheldon*, 165 Cal. 319; *Dettra v. Kestner*, 147 Penn. St. 566; *Jewell v. McIntyre*, 62 App. Div. 396; *Snow v. Alley*, 144 Mass. 546.)

CARDOZO, Ch. J. Plaintiff brings this action for the rescission of a contract whereby shares of stock of the

Marr Oil Corporation were sold to the Southern States Oil Corporation in exchange for shares of stock of the last-mentioned corporation.

He had a judgment in his favor at the Special Term. The Appellate Division reversed and dismissed the complaint, holding that the plaintiff had failed to tender all the benefits received as a result of the exchange, and that purchasers for value and in good faith had acquired intervening rights.

In August, 1923, plaintiff was the president and principal shareholder of the Marr Oil Corporation. He owned all the shares of class A stock (25,000), and also upwards of 87,000 shares of class B. Class A shares were the only ones with voting power. Class B shares were held, not only by the plaintiff, but also by his co-directors and by others.

Two of the co-directors, Rottenberg and McFadden, undertook to negotiate a sale of plaintiff's shares to the Southern States Oil Corporation, represented by Ferris, its president, and Haskell, chairman of the board. The shares of the co-directors were to be sold at the same time.

A proposal to sell for cash was rejected by the buyer. There was substituted an exchange, the plaintiff and his co-directors assigning their shares in the Marr company and receiving in return at an agreed ratio the shares of Southern States. At the outset Rottenberg and McFadden, the agents conducting the negotiations, gave notice to Ferris, the representative of the Southern States, that they would expect " to be taken care of " for their services in recommending the exchange. To this there was assent. They received a secret gratuity of $50,000 in cash ($25,000 each), and 7,039 shares in addition to the number due to them at the ratio of exchange made known to the others.

The Southern corporation did not limit its wrongdoing to the corruption of the plaintiff's agents (*Donemar, Inc.,* v. *Malloy,* 252 N. Y. 360). It added the offense of fraud.

There were false representations as to its plant, its earnings, its capacity, and the value of its shares. The fraud is found by the trial judge, and the Appellate Division has not disturbed the findings. Found also is the bribe. The exchange of shares was made on August 30, 1923. Not till July, 1925, did the plaintiff learn that his agents were disloyal. This action was begun the following November.

(1) We deal first with the ruling that the tender was inadequate.

(a) The defendants make the objection that the plaintiff did not offer to return to the Southern company all the shares of Southern stock acquired in exchange.

He tendered all the shares acquired by himself and by his innocent co-directors. He did not tender any of the shares acquired by the guilty.

The omission does not avail to thwart a court of equity in decreeing a rescission. Rottenberg and McFadden were parties to a fraudulent conspiracy. The refusal of the conspirators to join in the undoing of the wrong may not be used as an excuse by partners in their guilt to keep the wrong alive. Equity is not crippled at such times by an inexorable formula. In exacting the return of benefits as a condition of rescission it proportions the exaction to the justice of the case before it (*Buffalo Builders Supply Co.* v. *Reeb,* 247 N. Y. 170, 175, 176; *Butler* v. *Prentiss,* 158 N. Y. 49, 63; *Heckscher* v. *Edenborn,* 203 N. Y. 210, 227). " The wrongdoer will be left in the toils of his duplicity " (*American Surety Co.* v. *Conner,* 251 N. Y. 1, 10).

(b) The defendants make the objection that the plaintiff did not return, or offer to return, $66,470, with interest from December 6, 1923, the sum received upon a resale to the Southern States, or to some allied syndicate, of 2,890 shares out of the total previously acquired.

What the plaintiff has done is to buy back in the market at a nominal price an equivalent number of cer-

tificates, and to make tender of these as a substitute for the certificates acquired at the time of the exchange. This does not exhaust the measure of his duty. If in ignorance of the fraud he has profited through the intervening ownership by turning the certificates into cash when market prices were high, he is not at liberty to keep the cash, and offer as a substitute certificates bought back when the market price was nominal.

The tender was deficient, but the deficiency does not exact the dismissal of the complaint. A different situation would be here if the action were at law upon the basis of a rescission already effectively declared. Instead, it is in equity to procure the declaration of a rescission on whatever terms may be just (*Buffalo Builders Supply Co.* v. *Reeb, supra; Allerton* v. *Allerton,* 50 N. Y. 670; *Vail* v. *Reynolds,* 118 N. Y. 297, 302; *Thomas* v. *Beals,* 154 Mass. 51). Suitable conditions may be imposed by the decree (*Thomas* v. *Beals, supra; Allerton* v. *Allerton, supra;* American Law Inst., Restatement, Contracts, § 98A).

(c) The defendants make the objection that there were other intervening sales, and that the profits growing out of them should have been included in the tender.

Included they should have been if intervening sales were made. We cannot find in the record any evidence of the making. The plaintiff denies that he made any, though conceding that he tried, and there is nothing to contradict him. The whole case for the defendants in that regard is built upon the circumstance that some of the certificates tendered on the trial bear dates subsequent to the date of the beginning of the action. These certificates, however, represent only 2,475 shares, and by concession the plaintiff had to buy back 2,890 shares in replacement of the shares disposed of to the syndicate. There is nothing in the purchase that is evidence of other trades or profits.

The fact is not ignored that many of the earlier certifi-

cates were made out in the name of Hale, the plaintiff's assignee. Hale took them from the plaintiff in 1924, but merely as a " dummy," to sell them if he could. The uncontradicted testimony is that a sale was then impossible. What the plaintiff tells us to that effect does not rest on his word only. It is corroborated by the fact that the certificates were still in the name of Hale when tendered on the trial. It is corroborated even more convincingly by the fact that the market for the shares collapsed about Christmas, 1923, and that sales thereafter were impossible at more than a nominal price.

We discover no basis for a finding that the plaintiff had made profits (aside from the item of $66,470) which he was under a duty to return.

(2) We are now brought to the objection that rescission is precluded as a result of intervening interests.

The shares of the Marr Oil Corporation acquired by the Southern company in August, 1923, were transferred the following November to the Gulf States Oil and Refining Corporation. Ferris and Haskell, the officers of the Southern company, who were parties to the fraud and bribery, were officers also of the Gulf company, and acted in its behalf. What was notice to them was notice also to the company (*Holden* v. *N. Y. & Erie Bank*, 72 N. Y. 286; *Title Guarantee & Trust Co.* v. *Pam*, 232 N. Y. 441, 456, 457). Rescission is not checked until the property to be reclaimed has passed into the ownership of a purchaser for value without notice of the wrong.

The record leaves it uncertain whether the shares were transferred by the Southern company directly, or indirectly through another company, the Middle States Oil Corporation. The difference is not important. The two corporations were controlled by the same officers. The mazes of their interlocking directorates are not easily unraveled. Enough for present purposes that the common elements are adequate to charge each of them with notice (*Mammoth Oil Co.* v. *United States*, 275 U. S. 13, 54).

The defendants argue with earnestness that many innocent persons, strangers to the defendants' wrong, have become shareholders in the Gulf corporation since November, 1923, and have done so in the belief that the Marr lands and leases were included in the assets. This does not avail to give validity to an assignment accepted by the corporation with notice of its tainted origin. The title to corporate assets is not vested in the shareholders. The title is in the corporation, and if voidable in its inception remains voidable thereafter without reference to changes in the distribution of the shares. The shareholders must suffer for the wrongs committed by their officers (*Gardner* v. *Keogh Mfg. Co.*, 63 Hun, 519, 520; *City Equity Co.* v. *Elm Park Realty Co.*, 135 App. Div. 856).

The defendants argue also that the transfer of the Marr shares to the Gulf States Oil and Refining Corporation, if set aside now, will work injustice to the Island Refining Corporation or to a reorganization committee of its bondholders. The documents are complicated and not easily understood. Analysis of their provisions does not sustain the claim of hardship.

There were two corporations, the Gulf Coast Refining Corporation (known as the refining company) and the Gulf States Oil and Refining Corporation (known as the operating company). The Island committee made a contract with the Southern States Company and the Middle States Company in anticipation of the formation of the refining and operating companies. The Island committee was to make certain transfers to the two Gulf companies, receiving back as consideration the mortgage bonds of the refining company. It was to receive as additional consideration the stock of the refining company, but the stock, unlike the bonds, was to be assigned after it was received. The Southern and the Middle companies were to transfer to the Gulf operating company oil lands and leases, including, it seems, those repre-

sented by the shares of stock in suit. For this they were to get a large block of the common stock of the operating company. In brief, the Island company was to be paid in bonds of the one corporation and the Southern and Middle in shares of the other.

The transaction, thus analyzed, does not offer an obstacle to the plaintiff in his claim for restitution. To set aside the transfer of the shares in suit will leave the Island committee in the ownership of everything that it was to receive from the Gulf companies or either of them in payment for its assets. It will still hold its mortgage on the property of the Gulf Coast Refining Company, and the bonds secured thereby. The only Gulf company that will be the poorer as the result of the rescission will be the operating company, whose stock was issued in payment, not for any Island assets, but for transfers by the Southern and the Middle corporations, privies to the fraud.

One provision of the Island contract ought to be added to the foregoing summary lest it be thought to have been forgotten. The Southern and the Middle corporations, after receiving the stock of the operating company, were to assign about ten per cent. of it to the Island committee. This latter assignment was not payment for anything conveyed by the Island committee to the Gulf operating company. It was payment for shares of the refining company assigned by the Island committee to the Middle company and the Southern.

(3) The conditions prescribed by the trial court are erroneous in that they are narrower than the plaintiff's tender at the trial.

The plaintiff offered to return, not only his own certificates with dividends paid thereon, but also the certificates and dividends received by his associates other than the conspirators. The decree of rescission erroneously exempts him from the duty of restoring any certificates and dividends other than his own.

The judgment of the Appellate Division should be reversed, and that of the Special Term modified by providing that as a condition of the rescission the plaintiff shall pay to the defendants, receivers of the Southern States Oil Corporation, the sum of $66,470, with interest from December 6, 1923, and shall also restore to them the shares of stock received by his associates (other than Rottenberg and McFadden), with any dividends paid thereon and interest from the dates of payment, and as so modified the judgment should be affirmed, without costs in the Appellate Division or in this court. (See 256 N. Y. 664.)

CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; POUND and HUBBS, JJ., not sitting.

Judgment accordingly.