Charles S. MOTT, Plaintiff-Appellant,

v.

**TRI-CONTINENTAL FINANCIAL CORPORATION, Defendant-Appellee.**

**No. 309, Docket 28577.**

United States Court of Appeals
Second Circuit.

Argued Jan. 31, 1964.

Decided April 16, 1964.

David B. Landis, New York City (Arthur N. Abbey, Duke & Landis, New York City, on the brief), for plaintiff-appellant.

John R. Hupper, New York City (Charles G. Moerdler, Cravath, Swaine & Moore, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge:

May a purchaser secure rescission of a sale of stock on the ground of fraudulent misrepresentations when he cannot show that he suffered any pecuniary damage and when he no longer owns any of the stock purchased? We agree with the district court that, under the governing law of New York, such an action may not be maintained and accordingly we affirm the judgment of the United States District Court for the Southern District of New York dismissing the complaint of Charles S. Mott against the Tri-Continental Financial Corporation.

We take as true the allegations in Mott's complaint. On April 16, 1956, by oral agreement the defendant, Tri-Continental, a wholly owned subsidiary of Tri-Continental Corporation, one of the nation's largest closed-end investment companies, agreed to sell and Mott to purchase 50,000 shares of common stock in Commonwealth Oil Refining Company, Inc., for $14 per share or a total of $700,-000. Tri-Continental had first offered the stock to Mott at $12 per share through Joseph D. Murphy, Mott's long-time business adviser and associate. The negotiations for Tri-Continental were carried on by its president, Joseph H. King.

After several telephone conversations between Murphy in Illinois and King in New York, one between Murphy in Illinois and Mott in Michigan, and a visit by Murphy to Mott in Michigan, finally, on April 16, 1956, in a telephone conversation between Murphy in Illinois and Mott in Michigan, Mott agreed to purchase 50,000 shares at $14 per share. Murphy telephoned King in New York to inform him of Mott's decision but, since the Commonwealth shares were not qualified for sale in Michigan, Mott and King agreed to have the closing in Jersey City. The same day Mott mailed his check to the order of Tri-Continental for $700,000 to the First National City Bank of New Jersey, to which Tri-Continental delivered the stock certificates on April 20.

Between April 18 and April 27 Mott agreed to sell 5,000 of the Commonwealth shares to his son, C. S. Harding Mott, 5,000 to Mrs. Jane M. Sanderson, Murphy's daughter, and the remaining 40,000 shares to an irrevocable trust for the benefit of Mott's youngest daughter, Maryanne T. Mott. Harding Mott and Mrs. Sanderson each paid Mott $70,000 in cash, and Mott received a non-interest bearing demand promissory note for $560,000 from the trust. Two and one-half years after the purchase, on October 22, 1958, Mott brought suit in the Southern District of New York against Tri-Continental. In November 1960, at the request of one of the trustees, Mott made a gift to the trust of $560,000, which funds were used to discharge the note.

Mott's complaint alleges that King made misrepresentations to him through Murphy that Commonwealth was closely tied to Standard Oil Company, New Jersey, a company which Mott believed to be connected with "good people" and in which he held stock. In fact the relationship which existed between Standard and Commonwealth arose merely from crude oil contracts to which Commonwealth and Esso Export Corporation, a Standard subsidiary, were parties. Further, Mott alleges King grossly exaggerated the stock interest in Commonwealth held by Standard officers and employees. Finally, Mott charges that there were misrepresentations as to the progress of a refinery which he had been told Commonwealth had already completed.

Mott's complaint states two causes of action. In the first, based upon King's allegedly fraudulent misrepresentations, Mott seeks rescission of the contract, restitution of the purchase price, and restoration to Tri-Continental of the 50,000 shares of Commonwealth stock. Before commencement of the action, C. S. Harding Mott and the Maryanne T.

Mott trust agreed to transfer to Tri-Continental their 45,000 Commonwealth shares. Mrs. Sanderson, who had sold 800 of her shares on December 17, 1957, for $2.12½ per share, agreed to transfer the remaining 4,200 shares as well as 800 additional Commonwealth shares.

The second cause of action, which seeks the same relief, is based upon § 12(2) of the Securities Act of 1933, 15 U.S.C. 77*l* (2), on the ground that the stock was sold by the use of writing transmitted through the mails and oral communications in interstate commerce, which writing and communications were untrue and failed to state facts which would have made them not misleading.

Judge Croake dismissed the complaint, concluding that as to the first cause of action rescission could not be granted where the plaintiff had suffered no provable injury and that as to the second cause of action such relief was unavailable under § 12(2) of the Securities Act where the plaintiff no longer owns the securities.

The appellant maintains that the law of either New York or Michigan governs the common law cause of action, the laws of those states being substantially similar. The appellee contends that the action cannot be maintained under the laws of any of the four states related to the transaction, New York, Michigan, Illinois, and New Jersey. We need not decide which state law governs inasmuch as in our view New York law, which the plaintiff deems most favorable to his cause, provides no relief in these circumstances.

 The plaintiff maintains that under the law of New York injury need not be proved in an action for rescission, but rather that the plaintiff need establish only that misrepresentations induced the plaintiff to enter into the agreement. But the plaintiff has failed to cite any case, and we have found none, in which rescission was granted although the plaintiff had disposed of the property acquired under the contract at no loss to himself. Moreover, in two recent cases the New York Court of Appeals has made clear its view that injury is an essential element in an action for fraud, even where rescission is sought. See Sabo v. Delman, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957); Channel Master Corp. v. Aluminum Limited Sales, Inc., 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958). While a finding of injury may be predicated upon a showing that the plaintiff received something other than that for which he bargained, no injury is proved where the plaintiff divests himself of the property received under the contract at no loss to himself.

 Mott chose to effect this transaction in the form of a purchase and subsequent resale. Having chosen to sell the shares immediately to others at no loss to himself, Mott cannot now deny that his interest in the transaction terminated upon his receipt of the $140,000 in cash and the $560,000 promissory note. That four years later he relieved the trust of its obligation on the note in no way affects the principle of law here in issue. It is a prerequisite to restitution that a party disgorge to the other party any proceeds the former has received upon disposition of the original property. Marr v. Tumulty, 256 N.Y. 15, 175 N.E. 356 (1931). Thus, Mott would turn over to Tri-Continental the $700,000 proceeds from his sales to Harding Mott, Mrs. Sanderson and the trust, and Tri-Continental would return to Mott the $700,000 proceeds from the original sale—an exercise in futility.

 In light of the misrepresentations allegedly made to Mott, the injury one might reasonably have expected him to suffer was pecuniary in nature. The misrepresentations related to the monetary value of the stock and, indeed, it is because of the subsequent decline in value that this action was brought two and one-half years after the purchase. But Mott himself has suffered no pecuniary loss. In the district court, Mott alleged that the defendant was fully aware of his plan not to purchase the stock for his own benefit but rather to transfer it to others. We are not here concerned with whether the present owners of the stock may be able

to maintain an action for fraud upon proof of such facts. But what we do hold is that the law of New York affords Mott no relief.

The appellant fares no better as to the second cause of action. Section 77l(2) of the Securities Act provides that any person who sells a security through the mails by means of an oral communication which includes an untrue statement or omits a material fact shall be liable to the purchaser who may "recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns such security." It is plain that under this provision since Mott no longer owns the Commonwealth shares he is limited to an action for damages and may not be accorded rescission. As Mott can show no loss he has no cause of action under the statute.

The judgment of the district court is affirmed.