Terry **JAMES and Juha Kokko,**
**Plaintiffs-Appellees,**

v.

**Raymond H. MEINKE,**
**Defendant-Appellant.**

No. 85–1065
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1985.

Rehearing Denied Jan. 6, 1986.

Hugh O. Mussina, Dallas, Tex., for defendant-appellant.

Coyt Randal Johnston, Dallas, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, JERRE S. WILLIAMS, and PATRICK E. HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Raymond Meinke appeals from a judgment entered on a jury verdict in a civil suit for damages under the Racketeering Influence and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961–68 (West 1984 & Supp. 1985). To establish the predicate offenses of securities fraud required for liability under RICO, the jury found, in answer to Rule 49 interrogatories, every element of a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) (West 1981), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. While the jury found that neither plaintiff suffered "out-of-pocket" damages as determined from the value of the securities at the time of purchase, consequential damages to plaintiffs found by the jury, and proximately caused by Meinke's material misstatements and omissions in connection

with the sale, were sufficient to establish the predicate acts of securities fraud. We affirm.

## I

In early 1982, Raymond Meinke, a CPA, telephoned a client, Juha Kokko, about an investment opportunity in the Bratton Coach Works Company. Kokko had asked Meinke to keep him informed of attractive investments. Later a third party referred Terry James to Meinke for information about Bratton Coach Works Company. Bratton, a Texas corporation, was in the business of purchasing automobiles from dealers, cutting them in half, and stretching the bodies to make hearses or limousines. Meinke advised each man separately that Bratton was a potentially lucrative investment. Both James and Kokko were told the company needed additional investors because it had temporary cash flow problems, but that with an infusion of capital the company was capable of generating huge profits. Kokko invested $20,000, and James invested $38,330.

After buying their stock, James and Kokko learned at a stockholder's meeting that Bratton urgently needed more money and that for the company to even survive it would be necessary for the stockholders personally to guarantee a loan for an additional $95,000. Both James and Kokko did so. James testified that he was told he would be issued shares of stock in Bratton in exchange for any payment under the guarantee agreement. Later they were asked to guarantee an additional $200,000. Kokko agreed to guarantee this second loan, but James refused. Bratton did not pay the first loan and James and Kokko were asked to pay their pro rata shares; Kokko paid $5,845, and James paid $11,325. Each man is potentially liable for some $16,000 that has not been paid on the first note (Meinke's pro rata share) and Kokko is also potentially liable for the unpaid balance of roughly $70,000 on the second loan that has not been fully repaid.

James and Kokko claim that Meinke did not fully disclose Bratton's financial status and prospects before they bought their stock. Both men testified they were told the company had a large backlog of orders, that selling the cars was "no problem," and that each car could be sold at a profit of between $4,000 and $8,000. Each claims he was told the company's products were well made and that there was little competition in the hearse and limousine market.

Kokko claims he was never shown the company's financial records although he did see projection sheets which indicated that the company was losing money but would soon be very profitable; his only source of information prior to investing was Meinke. James likewise claims that he relied entirely on appellant's representations concerning the money.

In fact, the company had sustained substantial financial losses in the six months before the stock purchase, had delinquent payroll taxes of $49,200, notes payable of $119,000, and substantial quality control problems. There was no backlog of orders, Bratton had difficulty selling the cars it manufactured, and the cars it did sell were sold at a loss. In addition, it had numerous competitors in the hearse and limousine business.

James and Kokko's complaint alleged that Meinke violated the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, and Texas state laws. In an amended complaint they added that Meinke had committed stock fraud on more than one occasion and was therefore liable for treble damages and attorney's fees under the Racketeering Influence and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961–68 (West 1984 & Supp.1985). The pendent state claims were dismissed by the court before trial.

The jury found that each element of a Rule 10b–5 securities fraud violation had been established against Meinke by each plaintiff in connection with the sale of the Bratton stock.[1] The jury also found that

1. The jury answered the following questions affirmatively as to both James and Kokko, except

both plaintiffs had established all the necessary elements of a claim under RICO.[2] Special interrogatories were submitted to the jury on the amount of damages justified as full and reasonable compensation for all of plaintiff's injuries. It found no difference between the actual value of the Bratton stock at the time of the sale and the purchase prices paid by James and Kokko,[3] and found that James had suffered damages in the amount of $49,655.66 and Kokko in the amount of $25,848.15, as a result of the execution of the guarantee agreements.[4] These sums equal the amount paid out by James and Kokko on the guarantees plus the purchase price of the stock.

Both sides moved for judgment on the verdict. The district court entered judgment for James and Kokko, awarding treble damages on the RICO claims and attorney's fees, 606 F.Supp. 125. Meinke moved to reconsider the judgment, arguing that since the jury found no difference between the value of the stock purchased and its actual value, there were no Rule 10b–5 violations as a matter of law, and therefore no predicate acts of securities fraud upon which the RICO judgment could be based. The district court ruled that the guarantee agreements constituted securities, that the jury found actual damages resulting from the guarantees, and that acts of securities fraud arising from their execution provided the basis for judgment against Meinke on the civil RICO claim. The court awarded James and Kokko treble damages of $148,966.98 and $77,544.45 respectively, based on the damages found by the jury from the execution of the guarantees. Additional

Question Five, which was answered negatively as to both.

*QUESTION NO. 1* Do you find that Meinke used the mails, telephone, telegraph or any other instrumentality of interstate commerce in connection with the sale, or offer for sale, of Bratton stock to James or Kokko?

*QUESTION NO. 2* Do you find that Meinke misrepresented a "material" fact to James or Kokko in connection with the Bratton stock sale?

*QUESTION NO. 3* Do you find that James or Kokko "justifiably relied" upon Meinke's misrepresentations of material fact in connection with the purchase of Bratton stock?

*QUESTION NO. 4* Do you find that Meinke omitted to state a material fact to James or Kokko which fact was necessary to prevent Meinke's other statements, under the circumstances, from being misleading in connection with the Bratton stock sale?

*QUESTION NO. 5* Do you find that either James or Kokko did not rely on any material omission by Meinke in determining whether to purchase the Bratton stock?

*QUESTION NO. 6* Do you find that Meinke misrepresented a material fact, or omitted to state a material fact to James or Kokko in connection with the sale of Bratton stock, intentionally, knowingly, or recklessly?

*QUESTION NO. 7* Do you find that, in connected with the sale, or offer of sale, of Bratton stock, Meinke's misrepresentations, or omissions to state material facts, proximately caused any damages to James or Kokko?

2. The jury answered the following special interrogatories affirmatively as to both James and Kokko:

*QUESTION NO. 11* Do you find that Meinke committed two (2) or more acts constituting a "pattern of racketeering activity?"

*QUESTION NO. 12* Do you find that through Meinke's racketeering activities, as found by you in Question No. 11, Meinke was directly or indirectly investing in, maintaining an interest in, or participating, in an "enterprise?"

*QUESTION NO. 13* Do you find that Meinke was employed by or associated with the enterprise found by you in Question No. 12?

*QUESTION NO. 17* Do you find that the activities of the "enterprise," found by you in Question No. 13 ... affected "interstate or foreign commerce?"

*QUESTION NO. 18* Do you find that either James or Kokko was injured in his business or property by reason of Meinke's operation of the enterprise through a pattern of racketeering activity?

3. *QUESTION NO. 19* What amount of money do you find represents the difference between the purchase price paid and the actual cash value of Bratton securities on the date they were purchased with respect to (a) Terry James and (b) Juha Kokko?

    (a)  Terry James  <u> 0 </u>

    (b)  Juha Kokko  <u> 0 </u>

4. *QUESTION NO. 20* What amount of money do you find represents damages, if any, suffered by each plaintiff as a result of his guarantee(s) of the note(s) to United States Bank? Answer in dollars and cents, if any, or none.

    (a)  Terry James  <u>49,655.66</u>

    (b)  Juha Kokko  <u>25,848.15</u>

attorneys' fees were also awarded to each plaintiff.

## II

A civil RICO claimant must prove (1) a violation of the substantive RICO statute, 18 U.S.C.A. § 1962 (West 1984), and (2) an injury to the plaintiff's "business or property by reason of a violation of Section 1962," 18 U.S.C.A. § 1964(c) (West 1984). *Alcorn County v. U.S. Interstate Supplies*, 731 F.2d 1160, 1167 (5th Cir.1984). A violation of § 1962(c), upon which plaintiffs rely, requires:

> (1) The existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant [was "employed by" or] "associated with" the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity, i.e., by committing at least two acts of racketeering activity designated in 18 U.S.C.A. § 1961(1).

*Alcorn County*, 731 F.2d at 1167–68 (quoting *United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir.1981)).

Our focus is on whether the two or more predicate acts of racketeering activity required by § 1962(c) were sufficiently established in this case. Included in the list of "racketeering activities" as defined in § 1961(1) is "any offense involving ... fraud in the sale of securities." 18 U.S.C.A. § 1961(1)(D) (West Supp.1985). The Rule 10b–5 securities violations submitted to the jury would therefore suffice as the predicate acts of racketeering activity for the RICO claims, if sufficiently established.

Meinke argues that because the jury found that the actual value of the Bratton stock equaled its purchase price, there was no damage to plaintiffs resulting from its sale, and that plaintiffs therefore failed to establish a violation of Rule 10b–5. He concludes that the requisite two or more predicate acts of securities fraud were therefore insufficiently established, and that entry of judgment on the RICO claim was improper.

Plaintiffs respond by adopting the argument set forth by the trial judge in his Memorandum Order—that the guarantee agreements were themselves securities, and that Meinke's misrepresentations and omissions accompanying their execution were Rule 10b–5 violations upon which a RICO claim might be predicated. Alternatively, plaintiffs argue that the damages found by the jury to have arisen from execution of the guarantees were consequential damages proximately caused by Meinke's misrepresentations and omissions in connection with the original sale of Bratton stock, since the execution of the guarantees was a necessary extension of the original investment. These damages, argue plaintiffs, establish the injury element required in a Rule 10b–5 claim.

First, we pause to dispatch a collateral concern. It could be argued that with a corporation whose stock is closely held, as here, the jury's answer that the "actual value" of the Bratton stock equaled its purchase price was irreconcilable with its answer that Meinke's representations were not true. This potential argument turns on the meaning of actual value. No instructions were given to the jury to aid its determination of "actual value." Its meaning might have been signaled by the closing arguments, but they were not transcribed. On the cold record we are uncertain of its meaning. Because Meinke has never made the argument, we do not decide the question. Arguments not made ordinarily are best ignored. Having set out the interrogatories to the jury, we express this caution.

## III

We begin our analysis by rejecting the proposition that the guarantee agreements were securities, and that misstatements and omissions made in connection with their execution could be the basis for RICO liability. The district court reasoned that the guarantees were executed as consideration for the promise that plaintiffs would receive additional stock in Bratton, and in the expectation that as a result of

these transactions they would receive profits of the corporation through its management and operation by Meinke and others. Expectation of profit, however, is not sufficient to bring a guarantee of a commercial loan within the ambit of a security as defined in 15 U.S.C.A. § 78c(a)(10) (West Supp.1985).[5] A guarantee does not involve "an *investment* of money in a common enterprise," *Crabtree Investment v. Aztec Enterprises*, 483 F.Supp. 211, 215 (M.D.La. 1980) (emphasis in original), but rather an agreement to repay a loan to the lender should the borrower default.

### IV

We turn to the question of whether Meinke's Rule 10b-5 violations in connection with the original sale of Bratton stock might support RICO liability.

■ Rule 10b-5 claim requires material misrepresentation, scienter, reliance, diligence, and injury. *Siebel v. Scott*, 725 F.2d 995, 1000 (5th Cir.1984); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 543 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1982); *Dupuy v. Dupuy*, 551 F.2d 1005, 1014 (5th Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977). In *Huddleston* we considered the relationship between misrepresentation and injury, and concluded that an investor must show that "the misrepresented fact [was] a *proximate* cause of the loss." 640 F.2d at 549 (emphasis in original). Underlying this requirement was the concern that "[a]bsent the requirement of causation, Rule 10b-5 would become an

insurance plan for the cost of every security purchased in reliance upon a material misstatement or omission." *Id.*

The jury found that both James and Kokko were damaged by Meinke's misrepresentations, but found no damage as measured by the "out-of-pocket" rule—the difference between the real value of the Bratton stock and the amount paid by the plaintiffs at the time of purchase—which is the traditional measure of damages in a Rule 10b-5 action. *See Huddleston*, 640 F.2d at 555–56; *Siebel*, 725 F.2d at 1001. In order to affirm the judgment below, we could take either of two approaches. First, we could determine that there was a violation of Rule 10b-5 sufficient to support RICO liability despite the absence of actual damage. Alternatively, we could determine that the district judge impliedly found, under Fed.R. Civ.P. 49, that the damages determined by the jury to have arisen out of the execution of the guarantee agreements were proximately caused by Meinke's original misstatements and omissions and that such consequential damages meet the injury requirement of a Rule 10b-5 claim. We take the latter approach.

We have stated that "it is well-settled that Rule 10b-5 allows recovery of both general and special (or consequential) damages." *Meyers v. Moody*, 693 F.2d 1196, 1212 (5th Cir.1982) (citation omitted). Such special damages may not be awarded if their relationship to the defendant is too remote; significantly, however, "special or consequential damages are recoverable even if the plaintiff can show no general damages." *Id.*

---

5. That section provides in full:

(10) The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle,

option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

Other circuits that have addressed the issue of consequential damages in Rule 10b–5 actions have affirmed their availability when it can be proven with reasonable certainty that such damages were caused by the defendant's 10b–5 violation. *See Garnatz v. Stifel, Nicolaus & Co.*, 559 F.2d 1357, 1360–61 (8th Cir.1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978); *Foster v. Financial Technology Inc.*, 517 F.2d 1068, 1071 (9th Cir.1975); *Madigan, Inc. v. Goodman*, 498 F.2d 233, 238–39 (7th Cir.1974); *Zeller v. Bogue Electric Manufacturing Corp.*, 476 F.2d 795, 801–03 (2d Cir.1973); *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1228–29 (10th Cir.1970); *Bowman & Bourdon, Inc. v. Rohr*, 296 F.Supp. 847, 852, (D.Mass.), *aff'd*, 417 F.2d 780 (1st Cir.1969). The *Madigan* and *Garnatz* decisions are particularly analogous to the present case.

In *Madigan*, the plaintiffs sought to recover consequential damages for capital contributions made to an insurance company after they had been induced to purchase its stock as a result of understated available reserves for losses and loss adjustment expenses. After discovering the insurance company's actual condition, plaintiffs made capital contributions to the company in an unsuccessful effort to prevent its insolvency. The Seventh Circuit held that even though plaintiffs, having resold at their purchase price, suffered no loss as to the stock itself, they were "entitled to recover out-of-pocket consequential damages suffered as a result of holding [the] stock," if it could be shown that "each expenditure ... was a reasonable effort to, *e.g.*, minimize the plaintiffs' losses ..." and that they were trying to save the company from "the pre-existing insolvency concealed by defendants, and that but for defendants' misrepresentations, plaintiffs would not have made these expenditures." *Madigan*, 498 F.2d at 238–39.

In *Garnatz*, the plaintiff was induced to participate in a bond margin account program upon assurances that the program was a low-risk investment. The bonds actually purchased were high-yield, highly-speculative bonds. Because the value of the bonds equaled their purchase price, defendants urged a strict application of the "out-of-pocket" rule to deny recovery. Stating that "the fact that plaintiff got what he paid for does not mean he did not suffer any legally cognizable injury from defendants' fraud," the Eighth Circuit held that:

> [T]he gravamen of the present action was not whether [the plaintiff] bought the bonds for a fair price, but that he bought at all. Absent defendants' representations regarding the safety of the program, plaintiff's express disdain for speculation undoubtedly would have precluded his participation....

*Garnatz*, 559 F.2d at 1360. The court concluded that plaintiffs were entitled to "rescissory damages[s]," as well as "any other losses properly attributable to defendants' wrongdoing." *Id.* at 1361 (footnote omitted).

Elements of both *Madigan* and *Garnatz* are present in this case. Meinke made numerous misrepresentations to plaintiffs about the financial status of Bratton and about the amount of capital necessary to relieve Bratton of a "temporary cash-flow problem" before large profits could be generated from the backlog of orders Meinke claimed the company had. Plaintiffs were not experienced investors, and they relied on Meinke's representations that Bratton was an "excellent" or "A-plus" investment. As in *Garnatz*, while the stock may have been valued at what plaintiffs paid for it, Bratton was in fact a highly risky and unsafe investment; but for Meinke's misrepresentations concerning demand for Bratton's product, its quality, and the profit margin on sales, plaintiffs would not have invested. As in *Madigan*, plaintiffs were forced into an unsuccessful effort to avoid the consequences of the extreme financial weakness of Bratton concealed by Meinke, here through the execution of guarantees upon which they became personally liable.

The jury was not asked whether Meinke's material misstatements and omis-

sions in connection with the sale of the Bratton stock were a proximate cause of the damages plaintiffs sustained from the execution of the guarantees. Fed.R.Civ.P. 49(a) provides that where special interrogatories are submitted to the jury, and an issue of fact is omitted,

> each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

There was no demand that the issue of causation be submitted to the jury, and the trial court made no specific finding regarding the causal relationship between the original fraud and the later expenditure. Given the judgment, the district court is deemed to have found proximate causation between the fraud and the consequential damages; the evidence, while conflicting, supports that implied finding.

 With this finding of causation, we are persuaded that the consequential damages to plaintiffs, arising from Meinke's material misstatements and omissions in connection with the original sale of Bratton stock, are sufficient to meet the injury requirement of a Rule 10b–5 claim, and that plaintiffs established the necessary two predicate acts of securities fraud upon which the verdict of RICO liability was based.

### V

Meinke raises two other objections concerning the amount of damages awarded. He first argues that the amount did not conform to the evidence. Meinke neither moved for a directed verdict, nor made any objection to the trial court concerning the amount of damages. He twice moved for judgment without raising the issue. We refuse to review the sufficiency of the evidence supporting the amount of a damages award where a party "neither moved for a directed verdict nor in any manner or

at any time asked the district court to review the award of actual damages for excessiveness nor otherwise ever took any action in the district court to present this issue." *Wells v. Hico Independent School Dist.,* 736 F.2d 243, 259 n. 26 (5th Cir.1984); *see also Sam's Style Shop v. Cosmos Broadcasting Corp.,* 694 F.2d 998, 1005 n. 15 (5th Cir.1982).

Meinke's final argument is that there was no proof of damages separate and apart from the injuries caused by the predicate offenses of securities fraud. Since this appeal was filed, the Supreme Court has determined that RICO does not require any "racketeering injury" separate from the harm arising out of the predicate acts. *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985).

The judgment is AFFIRMED.